**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MAGDA I. ALVAREZ** | |
| **Plaintiff,** | **Civil No. 12-1022 (GAG)** |
| **v.** | |
| **ERIC K. SHINSEKI,** | |
| **Defendant.** | |

**OPINION AND ORDER**

Magda I. Alvarez ("Plaintiff") sues the Secretary of the Department of Veterans Affairs, Eric K. Shinseki ("Defendant"), in his official capacity for allegedly violating the Age Discrimination Employment Act ("ADEA"). Plaintiff seeks $400,000 in compensatory and punitive damages, and other forms of relief found in the complaint. (Docket No. 1 at 4.) Defendant moved for summary judgment (Docket No. 17) and Plaintiff opposed the motion (Docket Nos. 22-24). For the following reasons, the court **DENIES** Defendant's motion for summary judgment at Docket No. 17.

I.      **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

Civil No. 12-1022 (GAG)

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II. Factual Background

The court reads the facts in the light most favorable to Plaintiff. See Ortiz-Rivera v. Astra Zeneca LP, 363 Fed. Appx. 45, 48 (1st Cir. 2010). Plaintiff and Defendant agree on most of the facts.

**Civil No. 12-1022 (GAG)**

This dispute arose over whether Defendant discriminated against Plaintiff on the basis of age when, by letter dated June 12, 2008, Defendant notified Plaintiff that "she was qualified but not selected for the position of Clinical Pharmacist, GS-660-12, under Vacancy Announcement No. T-38-07-163, located at the [Veterans Affairs] Caribbean Healthcare System, San Juan, Puerto Rico" ("VACHS").  (Docket No. 18 at 1.)

In 2006, Plaintiff worked as a staff pharmacist at VACHS and relocated to the West Palm Beach Veterans Affairs Medical Center in Florida from 2006 through 2010 to fill a similar position.  (Id. at 2.) In 2008, she applied for a clinical pharmacist position at VACHS.  (Id.)  Eighteen candidates applied for the advertised clinical pharmacist positions, and Human Resources Specialist Zulmaris Santiago referred all eighteen for interviews with the Pharmacy Service.  (Id. at 3.)  Santiago oversaw recruitment for certain healthcare occupations and their credentialing processes for Veterans Affairs ("VA").  (Id. at 9.) Plaintiff "was referred alone in one certificate" by Santiago because "she was the only qualified candidate to be referred" at the time she applied.  (Id.)  Santiago "did not know the age of the candidates interviewed for the position."  (Id. at 4.)  During the relevant time period, Plaintiff was either 44 or 45 years old.  (Id. at 11.)

The candidates were evaluated according to the "Performance Based Interviews (PBI) and via a written evaluation of clinical cases representing typical situations to be encountered in this position, by a panel consisting of Giselle Rivera, Clinical Pharmacy Coordinator, and Juan Feliu, Pharmacy Service Education, Training and Research Section Supervisor."  (Docket No. 18 at 11.)  Plaintiff achieved a 68.76%, over six percent below the requisite passing score of 75%.  (Id. at 5.)  Plaintiff contends Defendant used this examination as an excuse to arbitrarily deny Plaintiff employment.  (See generally

3

**Civil No. 12-1022 (GAG)**

Docket No. 24.)  Plaintiff was a permanent VA employee when she applied, was qualified for the position, and was considered an outside candidate who would be a "transferred employee."  (Id. at 10.)

  "Nobody ever told [Plaintiff] that she was not selected . . . because of her age;" indeed, "[a]nother female employee over the age of forty got one of the positions of [c]linical [p]harmacist in the year 2008." (Id. at 12.)

     Rivera created the clinical case evaluation portion of the interview based on her own clinical experience and other published references, such as books on applied pharmacotherapy and reviews used by candidates for board certification.  (Id. at 6.)  Rivera does not recall exactly which textbook, treatise, journal, or other literature she used to prepare the questions; rather, she claims she relied on her experience.  (Docket No. 24-1 at 4.)  Furthermore, Rivera alone assessed these evaluations, though she claims Feliu and Dr. Mirsa Martinez reviewed the questions to validate them.  (Id. at 11.)  The Equal Employment Opportunity Commission ("EEOC") found that the "questions/clinical cases were not validated because they are not the result of 'standardized' process or scientific methodology."  (Docket No. 24-8 at 3.)

     During the search, residents who had completed the Pharmacy Residency Program at the University of Puerto Rico were exempted from the PBI and written clinical case evaluation stages of the hiring process.  (Docket No. 18 at 6.)  Residents are appointed for one year, beginning July 1st and ending the following June 30th.  (Docket No. 24 at 4.)  When pharmacy residents are appointed, they "can be converted to a permanent position" after they complete their residencies.  (Id.)

     Five pharmacy residents were selected to partially fill the outstanding vacancies.  (Docket No. 18 at 6.)  Defendant states that the "group of [r]esidents had a Pharm. D. Degree, completed their Pharmacy

**Civil No. 12-1022 (GAG)**

Residency Program, and were awaiting probationary appointment." (Id.) Santiago's deposition testimony reveals that these five residents were selected on May 30, 2008, yet they completed their residencies on June 30, 2008. (Docket No. 24-6 at 17.) Both parties agree the "Selective Placement Factors for the Clinical Pharmacist position . . . required completion of a Pharm. D. Degree." (Docket No. 18 at 7.) Defendant states that "residents can be considered but cannot start as such until the completion of their residency program." (Docket No. 26 at 5.)[1]

The five residents selected worked "on station at the [] VAHCS and the process was consistent for the type of hire to employ residents." (Docket No. 18 at 7.) Defendant claims 38 U.S.C. § 7401(3) ("Hybrid Title 38 Appointment") grants authority to hire these five residents, yet Plaintiff disputes the permissibility of hiring these candidates for the job that she sought, and whether the residents "had a final evaluation on their knowledge, skills and abilities to perform the job . . .". (Id. at 7.) The evaluation of candidates "followed the requirements set by the American Society of Health Systems (ASHP), [which includes] an evaluation of the resident's competencies after each one of the required experiences" and additional evaluations from the Residency Program Director of the University of Puerto Rico's Pharmacy School, but Plaintiff disputes whether these residents underwent such an evaluation. (Id. at 8.) The goal of Veterans Affairs "is to retain the pharmacy residents since they were well trained and have experience at the VA." (Id. at 9.) Indeed, "A pharmacy resident who completes his/her residency can be converted

---

[1] Santiago's deposition testimony reads as follows:

| | |
|---|---|
| Counsel: | So consideration of those— five pharmacy residents would not be possible until they complete the residency. |
| Santiago: | Yes. |
| Counsel: | And then they can be appointed . . . |
| Santiago: | Yes. |

Civil No. 12-1022 (GAG)

to a clinical pharmacist without going through the interview process." (Id. at 10.)

Plaintiff filed a complaint with the EEOC for age discrimination and the Final Agency Decision was issued on August 31, 2010. (Id. at 9.) Plaintiff notes that she believes Rivera, who knew Plaintiff as a pupil at the pharmacy school, and Jose Rosa, the selecting official, discriminated against her, but that Feliu did not discriminate against her. (Docket No. 18 at 12; see also Docket No. 24-1 at 4, 13.) The Chief of Pharmacy appointed Rivera to the panel because she supervised the hiring search. (Docket No. 18 at 4.) Rivera "was aware that [Plaintiff] was younger than her but did not know her age," and "Feliu did not know Plaintiff's age." (Id. at 5.) Nathaniel Mercado, a staff pharmacist at VACHS from 1990 to 2010, stated that Rivera "did not like inbreeding because once you learn something wrong, you will keep doing it wrong and would not improve," Rivera was "looking for people with new ideas that were easy to learn," and "believed in young blood, and did not believe[] in promoting those already in the system." (Docket No. 24-2 at 24-25, 38, 49-50.)

III. Discussion

Plaintiff brings her claim pursuant to 29 U.S.C. § 623, which the First Circuit discussed in detail:

> [I]t is unlawful for an employer to refuse to hire or to discharge any individual or otherwise discriminate against him with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. A plaintiff asserting a claim under the ADEA has the burden of establishing that age was the but-for cause of the employer's adverse action. Such a plaintiff is not required to proffer direct evidence of discrimination, and may meet his burden through circumstantial evidence. To be sure, we have acknowledged that ADEA plaintiffs rarely possess smoking gun evidence to prove their employers' discriminatory motivations. In the absence of direct evidence of age discrimination, we evaluate ADEA claims under the three-stage burden-shifting framework of McDonnell Douglas Corp. v. Green.

6

Civil No. 12-1022 (GAG)

> In the first of the three <u>McDonnell Douglas</u> stages, the plaintiff has the
> initial burden of establishing a *prima facie* case of discrimination.  In an
> ADEA action this requires a showing (1) that he or she was at least 40
> years old at the time of discharge; (2) that he or she was qualified for the
> position but (3) was never the less fired [or suffered an adverse
> employment action]; and (4) the employer subsequently filled the position.
> Doing so gives rise to an inference that the employer discriminated due to
> plaintiff's advanced years.  If the plaintiff is able to establish a *prima facie*
> case, the burden shifts in the second stage to the employer, who must then
> produce a legitimate, non-discriminatory reason for termination.  If the
> employer is able to do this, the ball returns to the plaintiff's court, in which
> he must prove by a preponderance of the evidence that the defendant's
> alleged non-discriminatory reason was in fact a pretext for discrimination.
>
> . . .
>
> An employer's disparate treatment of employees in response to behavior
> that legitimately offends the employe[e] can provide evidence of
> discriminatory animus.   However, to successfully allege disparate
> treatment, a plaintiff must show that others similarly situated to him in all
> relevant respects were treated differently by the employer.

<u>Acevedo-Parrilla v. Novartis Ex-Lax, Inc.</u>, 696 F.3d 128, 137-38, 144 (1st Cir. 2012) (internal citations

omitted) (quotation marks omitted).  The facts, as agreed upon by the parties, clearly indicate that Plaintiff

presents a *prima facie* case.  Plaintiff, over age 40, was qualified for the position and denied employment.

The position was subsequently filled.  The court thus proceeds to the second prong.

Defendant summarizes the facts supporting a legitimate, non-discriminatory reason for refusing

to hire Plaintiff:

> After some candidates [for the clinical pharmacist position] failed to meet
> the minimum overall score [of 75%], there were still [positions] to be
> filled at the time.  The [five residents] were initially hired under the
> authority of 38 U.S.C. § 7405(a)(1), a temporary appointment to complete
> their pharmacy residency of one year on station at the [VACHS].
> Individuals serving under this type of appointment and [meeting] the
> requirements and appropriate VA qualifications standard[s] may be

Civil No. 12-1022 (GAG)

> considered for an appointment under 38 U.S.C. § 7401(3) on recommendation of the appropriate service chief or equivalent.  Plaintiff failed to meet the minimum score while all other non-residents selected to the position met the 75% overall evaluation score.  That is to say, a total of four candidates that took the same written clinical evaluation were hired when they met the overall score, their ages ranging from 32-47 years.

(Docket No. 19 at 10-11.)  Defendant's legitimate, non-discriminatory reasons thus include Plaintiff's failure to obtain the requisite passing score to receive an offer, a proffer that another candidate within the protected age group passed the examination and received an offer to fill the position, and that Defendant had statutory authority to hire the residents and exempt them from the same examination process. Withholding employment because a candidate fails to demonstrate sufficient qualifications for a position is legitimate and non-discriminatory.  Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012) (holding poor performance is a legitimate reason for adverse employment action).  The court now moves to whether Plaintiff proves by a preponderance of the evidence that Defendant's alleged non-discriminatory reasons were a pretext for discrimination.

The court reaches "'the ultimate issue,' which is whether – after assessing all of the evidence on the record in the light most favorable to [Plaintiff] – '[she] has raised a genuine issue of fact as to whether the termination of [her] employment was motivated by age discrimination.'" Acevedo-Parrilla, 696 F.3d at140 (quoting Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431 (1st Cir. 2002)).  Plaintiff must offer "some minimally sufficient evidence, direct or indirect, both of pretext and of [Defendant's] discriminatory animus." Acevedo-Parilla, 696 F.3d at 140 (quoting Mesnick v. Gen. Electric Co., 950 F.2d 816 , 825 (1st Cir. 1991)).  The court approaches this analysis mindful of the principle that "courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, or intent." Acevedo-Parilla, 696 F.3d at 140 (quoting Santiago-Ramos v. Centennial P.R.

8

Civil No. 12-1022 (GAG)

Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)).

Pretext exists where a defendant's rationale contains "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's offered reasons for the termination that a 'reasonable factfinder could rationally find them unworthy of credence . . . .'" Bonefont-Igarvidez v. Int'l Shipping Co., 659 F.3d 120, 124 (1st Cir. 2011) (quoting Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010)). The three facts Plaintiff cites to justify pretext are: 1) Rivera's allegedly arbitrary evaluation of Plaintiff's examination; 2) Defendant's hiring of five residents instead of Plaintiff, allegedly in violation of the Hybrid Title 38 Appointment regime, and; 3) Mercado's testimony regarding Rivera's sentiments and remarks on older employees.

The court denies summary judgment based on Mercado's testimony because it sufficiently alleges a factual matter the resolution of which falls outside the province of the court. Before reaching Mercado's testimony, however, the court discusses Defendant's evaluation and hiring practices because, standing alone without Mercado's testimony, neither likely constitutes age discrimination as a matter of law. This assessment is not surplusage. If the finder of fact fails to afford credence to Mercado's testimony or any other evidence attempting to establish age-based discrimination, neither Defendant's evaluation process nor Defendant's residential hiring practice can bolster Plaintiff's claim as a matter of law.

    A.    Defendant's Employment Decisions

Plaintiff earned a 68.76% overall evaluation score when she applied for the clinical pharmacist position. The hiring panel deemed this performance insufficient to extend Plaintiff an offer. Plaintiff contests that Rivera arbitrarily implemented this method of testing to exclude older applicants, citing

Civil No. 12-1022 (GAG)

Rivera's inability to recall with precision the references she used to compile the examination, her role as the sole evaluator of the exams, and the administrative determination that the exam lacked scientific methodology.

The case of Davila v. Corporacion de Puerto Rico Para La Difusion Publica instructs the court on balancing meritorious age discrimination claims against merely unwise or unfair employment decisions.  498 F.3d 9, 16-18 (1st Cir. 2007).  The First Circuit considered an ADEA claim in which the plaintiff "trie[d] to discredit his negative performance evaluations," and "cite[d] office gossip as a basis for concluding that the [employer] wanted to get rid of him because of his age."  Id. at 16.  The employee claimed that the evaluating employer misrepresented the results of his performance and "was unqualified to compile reviews."  Id.  The reviewing court found, "These allegations, even if true, would indicate no more than that the [adverse employment action] was unfair or unwise; they would not indicate age discrimination."  Id.  The court reaffirmed the axiomatic principle[2] that, "as long as [the employer] believed that the [employee's] performance was not up to snuff – and the [employee] has presented no evidence suggesting that management thought otherwise – it is not our province to second-guess a

---

[2]
The First Circuit has "consistently stated that mere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext."  Acevedo-Parilla, 696 F.3d at 140 (citing Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005)).  "More than a simple disagreement with the correctness of [Defendant's] decisions," such as "evidence sufficient to raise an issue of fact as to whether [Defendant] . . . truly believed [Plaintiff's] performance was unsatisfactory," merits denial of summary judgment.  Acevedo-Parilla, 696 F.3d at 140.  Whether an employer's perceptions are accurate or not, "so long as they are not discriminatory it is beyond the province of the court to act as a 'super personnel department[],'" second-guessing the process by which the decisionmaker has arrived at her conclusion . . . ."  Bonefont-Igaravidez, 659 F.3d at 126 (quoting Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007)).  Furthermore, "poor performance in a job is a conventional business motive" for termination, "not age discrimination . . . ."  Cameron, 685 F.3d at 48.

Civil No. 12-1022 (GAG)

decision to fire him as a poor performer." Id. at 17.  The principles of this case apply to the evaluation

process at bar.  In fact, Defendant even hired a similarly situated applicant within the protected age group

who underwent the same evaluation process for the same position.  Plaintiff offers no evidence of

iniquitous age-based discrimination in the evaluation process.  Considered in isolation, Defendant's

evaluation procedures do not constitute pretext.

Similarly, Plaintiff neglects to substantiate her claim that Defendant's Hybrid Title 38

Appointment practices exemplify pretext.  She principally asserts: 1) the five selected residents are

younger than members of the protected age group; 2) these particular residents enjoyed comparatively

lax evaluation processes, and; 3) Defendant circumvented statutory and administrative hiring practices

to fill the vacancies.  This court is neither in a position to assess the value of newly minted clinical

pharmacists versus seasoned applicants for upward lateral positions, nor has Plaintiff adduced facts

revealing a systemic policy of discrimination in the resident hiring regime.  Congress granted the VA

permission to appoint pharmacists under 38 U.S.C. § 7401(3).  Considered in isolation, Plaintiff's

argument lacks evidence of aged-based animus.  Plaintiff does not ask the court to determine whether the

VA's hiring practice overlooks more qualified applicants, compromises Title 38, or reflects arbitrary and

capricious application of its own regulations under 5 U.S.C. § 706.  Davila's holding that unwise or unfair

employment decisions are insufficient by themselves thus controls: without factual proffers of age-based

discrimination, these claims must fail as a matter of law.  Taken in tandem with Mercado's testimony,

however, the court finds that a reasonable juror could determine Defendant discriminated against Plaintiff

on the basis of age.

   B.  Mercado's Testimony

11

Civil No. 12-1022 (GAG)

Mercado asserts that intractability concerns motivated Rivera to discriminate against older applicants. Mercado states that Rivera told him that she "do[es] not believe in inbreeding," meaning she sought to avoid hiring "people that . . . were already in the system, because they believe that if you learn something wrong, you are going to keep, continue doing that wrong and you will not improve . . ." on bad habits. (See Docket No. 24-2 at 24-25.) This testimony obfuscates the origin of Rivera's purported animus: does she allegedly disfavor applicants because of age, or because of past experience with the VA, regardless of age? Mercado supplements this testimony with his own impression that Rivera overlooked older applicants because she could control young applicants more easily. (Id. at 38.) A reasonable juror may rationally infer that this discriminatory mentality encompasses applicants over forty.

Defendant replies that Mercado's factual allegations have "no bearing in this case and constitute[] hearsay." (Docket No. 26 at 3-4.) Mercado's statement carries weight in this case because he alleges that a decisionmaker in the hiring process harbors discriminatory animus against older applicants. Although only one conversation between Rivera and Mercado substantiates this finding, it suffices to surpass summary judgment. "Direct evidence of discrimination does not include stray remarks in the workplace, particularly those made by . . . decisionmakers unrelated to the decisional process itself." Rios-Jimenez v. Sec'y of Veterans Affairs, 520 F.3d 31, 40 (1st Cir. 2008) (internal citations omitted). But Rivera was a decisionmaker whose alleged remarks directly impact the hiring process. She decided, in her sole discretion, whether applicants passed a test she designed, a test which seasoned VA employees decried as too subjective by incorporating questions with multiple reasonable answers. Rivera's assessment directly influenced the hiring panel's decision to deny Plaintiff a position. Therefore, the stray remarks doctrine does not shield Defendant.

12

Civil No. 12-1022 (GAG)

Secondly, Defendant incorrectly claims that Mercado's testimony is hearsay.  Mercado's statements (Docket No. 24-2 at 24-25) are not hearsay because they articulate an opposing party's statement.  See FED. R. EVID. 801(d)(2)(A) (A statement is not hearsay if "offered against an opposing party and . . . made by the party in an individual . . . capacity."); see also FED. R. EVID. 801 advisory committee note ("A party's own statement is the classic example of an admission.").  Mercado alleges Rivera expressed her sentiments on inbreeding and tenured employees' intractability in a conversation. This conversation is the basis for denial of summary judgment.  Mercado's testimony regarding his belief that Rivera prefers to hire younger employees elaborates on his conversation with Rivera.  (Docket No. 24-2 at 38, 49.)  The relevant testimony is neither hearsay nor excluded.  Furthermore, Defendant's submissions shed no light on any legal justification for the court to find that Mercado's statements are hearsay.  It is not incumbent on the court to brief the parties' arguments.  Accordingly summary judgment is **DENIED**.

In this light, Defendant's resident hiring and evaluation practices may reasonably be considered pretext for discrimination.  Accepting a jury finding of discrimination at trial nonetheless hinges on whether Plaintiff otherwise avers sufficient evidence of discrimination exclusive of only the evaluation and resident hiring processes.  If not, and should the jury return a verdict in favor of Plaintiff, granting a Rule 50 motion may be appropriate.

**IV.    Conclusion**

For the reasons stated above, the court **DENIES** Defendant's motion for summary judgment. (Docket No. 17.)

**SO ORDERED**

13

**Civil No. 12-1022 (GAG)**

In San Juan, Puerto Rico this 10th day of April, 2013.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge

14